NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:
VICENTE RUBEN MARTINEZ, *Petitioner/Appellant*,

*v.*

CYNTHIA MARISOL GUTIERREZ, *Respondent/Appellee*.

No. 1 CA-CV 15-0861 FC
FILED 1-24-2017

Appeal from the Superior Court in Maricopa County
No. FC2013-006662
The Honorable Pamela D. Svoboda, Judge

**AFFIRMED**

COUNSEL

Joseph W. Charles, P.C., Glendale
By Joseph W. Charles
*Counsel for Petitioner/Appellant*

The Sampair Group, PLLC, Glendale
By Patrick S. Sampair
*Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Rick A. Williams[1] joined.

---

**W I N T H R O P**, Judge:

¶1 Vicente Ruben Martinez ("Father") appeals the family court's order granting Cynthia Marisol Gutierrez's ("Mother") petition to relocate their minor child to Mexico. Father argues that Mother committed fraud upon the trial court in earlier proceedings and that the trial court's best interest findings and negative findings related to Father are not supported by the record. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 Mother is a citizen of Mexico and a legal resident of the United States.[2] Mother and Father were married in 2010 and had a child in 2012. In 2013, Father filed for divorce, and both parties requested to be named the primary residential parent of the minor child.

¶3 Shortly after filing for divorce, Father filed a motion for a temporary emergency injunction, requesting, among other things, that the court prohibit Mother from taking the child out of the country for any reason unless agreed upon in writing by both parties. The court denied the motion.

---

[1] The Honorable Rick A. Williams, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2] The parties' decree of dissolution incorrectly stated that Mother was a dual citizen of Mexico and the United States. Mother's answering brief, however, clarifies that Mother is a Mexican citizen and legal resident of the United States, and she was eligible to apply for U.S. citizenship "within a few months of the Relocation hearing."

¶4 In December 2013, Judge George Foster conducted an evidentiary hearing on Father's petition for dissolution and heard testimony from witnesses, including Mother and Father.

¶5 In 2014, after taking the matter under advisement, Judge Foster issued a decree of dissolution and best interest findings regarding the minor child,[3] ordering Mother to be the child's primary residential parent and granting Father visitation rights.[4] Father was granted parenting time every other weekend and a mid-week parenting period for two hours each Wednesday evening.

¶6 In his decision, Judge Foster noted that Father's testimony was not credible[5] and stated that Father had "unfounded delusions that Mother w[ould] abscond to Mexico with the child." Mother's new relationship with a Mexican national was not "in and of itself [] enough to prove by a preponderance of the evidence that Mother would kidnap the child to live in Mexico."

¶7 Judge Foster also found that Father was "overbearing and aggressive" and "resort[ed] to hyperbole in an effort to control situations." Further, the court noted that Father's aggressiveness was "suggestive of a personality disorder."

¶8 Father filed a motion for reconsideration,[6] which was denied. Father did not appeal from the decree or the denial of the motion for reconsideration.

¶9 After Mother and Father were divorced, Mother remarried and had another child with her second husband, who resides in Mexico.

¶10 In April 2015, Mother filed a petition to modify parenting time, requesting permission to relocate to Mexico with the parties' minor

---

[3] *See* Ariz. Rev. Stat. ("A.R.S.") § 25-403(A).

[4] The court awarded joint legal decision-making authority to Mother and Father, with Mother having presumptive decision-making authority.

[5] Judge Foster stated that Father appeared to be "hiding his eyes from the Court" during his testimony and that "his body language [was] suggestive of a lack of candor."

[6] Father's motion for reconsideration made no allegations that Mother had committed fraud in her sworn pleadings and/or testimony.

child. Mother requested that Father's two-hour window of visitation on Wednesdays be restructured, with Father instead granted extra parenting time during the summer months. Mother asserted that she was willing to continue to transport the child from Mexico to Arizona every other weekend for Father's parenting time. In his response, Father requested that he be made the primary caretaker of the child because Mother "has resided primarily in Mexico since the Decree of Divorce," which has caused "considerable hardship" on the parties and child involved.

¶11         In November 2015, Judge Pamela Svoboda held an evidentiary hearing on Mother's petition. Mother testified that she has a home in Glendale, Arizona and a home in Rocky Point, Mexico, and that, over time, her Mexican home has slowly become her primary home, with frequent visits after the birth of her second child. In his closing statement, Father's attorney urged the court to deny Mother's petition and to order that Father should be their child's primary caretaker, arguing in part that Mother had perpetrated a fraud on the court by previously testifying at the 2013 dissolution hearing that she lived in Arizona.

¶12         After the hearing, the court issued an under advisement ruling granting Mother's petition. The court found that Father's fears that Mother would kidnap the child were unwarranted because Mother "continues to travel to and from Mexico with [the child] so Father can have his parenting time." Additionally, the child had been residing in Mexico with Mother during her parenting time and had already adjusted to life there. The court also found that Father had continued to engage in overbearing and aggressive behavior, and he had failed to appropriately respond to the child's medical issues. Accordingly, the court found that Mother met her burden of showing that relocating to Rocky Point was in the child's best interest.

¶13         Father timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

**ANALYSIS**

        I.      *Allegations of Fraud*

¶14         Father argues that the family court's order should be set aside because Mother committed fraud upon the court in 2013. Father asserts that Mother lied at the December 2013 dissolution hearing by testifying that she lived in Buckeye when, at that time, she already resided in Rocky Point. Father also alleges that Mother continued to engage in fraudulent conduct

after the dissolution hearing by not being honest with Father about where the child really lived.

¶15        The court's dissolution decree and orders concerning legal decision-making and visitation in 2014 were not appealed, and became final.  Further, Father has never filed a Rule 85 motion to set aside the decree or those orders on the basis of fraud or newly discovered evidence.

¶16        Further, to the extent Father is arguing a new claim of fraud upon the court subsequent to the dissolution decree, the record does not support Father's allegations.  Mother's testimony at the relocation hearing in 2015 that her Rocky Point home became her primary home after the birth of her second child in March 2014 constituted affirmative evidence that she was not living in Rocky Point at the time of the dissolution hearing in 2013.  Although Father, through counsel, argued against the court accepting such evidence, it was within the family court's discretion to accept Mother's testimony and/or otherwise reject Father's argument that Mother had misled the court in 2013, or that the evidence did not otherwise support her petition.  *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13, 972 P.2d 676, 680 (App. 1998) (noting that the appellate court defers to the trial court's determination regarding the weight to give conflicting evidence).

¶17        Moreover, we defer to the trial court's credibility determinations and the reasonable inferences to be drawn therefrom.  *See Reynolds v. United Producers & Consumers Co-op.*, 17 Ariz. App. 145, 147, 495 P.2d 1352, 1354 (App. 1972).  The trial court found that Father did not present any evidence that Mother had misled the court.  Therefore, we find no abuse of discretion.

          II.        *Relocation Determination*

¶18        Father next argues that the family court abused its discretion by granting Mother's request to relocate with the child to Rocky Point.  We review a trial court's grant of relocation for abuse of discretion.  *Hurd v. Hurd*, 223 Ariz. 48, 52, 219 P.3d 258, 262 (App. 2009).

¶19        A.R.S. § 25-408(I) sets forth the factors a court must consider pertaining to a relocation request and incorporates by reference the best interest factors from A.R.S. § 25-403.  A court's decision on a relocation request must contain specific findings as to all relevant factors and the reasons its decision is in the child's best interest.  *See* A.R.S. § 25-408(G); *Owen v. Blackhawk*, 206 Ariz. 418, 421, ¶ 9, 79 P.3d 667, 670 (App. 2003).  "No single factor is controlling" and all "should be weighed collectively." *Pollock v. Pollock*, 181 Ariz. 275, 278, 889 P.2d 633, 636 (1995).

¶20 Here, as an initial matter, the court acknowledged that joint legal decision-making was "logistically possible but more difficult if Mother relocates to Rocky Point." However, after making findings regarding the relevant statutory factors, the court concluded that Mother met her burden of showing that moving to Rocky Point with the child was in the child's best interest.

¶21 Specifically, the court found that although "Father testified that he loves the Child very much[,] . . . Mother has been historically, and remains, the primary caretaker of the Child." *See* A.R.S. § 25-403(A)(1) (requiring the court to consider the "past, present and potential future relationship between the parent and the child"). Additionally, "Father's only objection to the relocation is he is afraid [Mother] will kidnap the Child," but Father "offers no evidence [Mother] has engaged in any concerning behavior which would lead him to this conclusion."

¶22 The court also found that, since the parties' divorce, Mother has travelled weekly between Mexico and Arizona so that Father could see the child, and that relocation as proposed would in fact give Father more parenting time by allowing him extra time with the child in the summer. *See* A.R.S. § 25-408(I)(4)-(5) (requiring the court to consider the likelihood that the parent with whom the child will reside after the relocation will comply with parenting time orders and whether the relocation will allow a realistic opportunity for parenting time with each parent); A.R.S. § 25-408(G) ("To the extent practicable the court shall also make appropriate arrangements to ensure the continuation of a meaningful relationship between the child and both parents.").

¶23 The court noted Father's concerns about the child learning English, but found that the child could learn English and Spanish at the bilingual school at which Mother proposed to enroll her in Rocky Point. *See* A.R.S. § 25-408(I)(3) (the court must consider "the prospective advantage of the move for improving the general quality of life for the custodial parent or for the child").

¶24 In addition to its findings regarding the factors set forth in A.R.S. §§ 25-403 and 25-408, the court also noted that "despite being told about his overbearing and aggressive personality . . . Father continued to engage in similar behavior since, including engaging in very verbally abusive exchanges with Mother." Those findings were based on the documentary and video evidence presented at the hearing. In his testimony, Father acknowledged this behavior, and it was reasonable for the court to rely on such evidence in reaching its conclusions.

¶25 On the record before us, we find no clear error in the family court's findings. *See* Ariz. R. Fam. Law P. 82(A). Accordingly, because the evidence supports the court's relocation decision, the court did not abuse its discretion in granting Mother's petition.

### III. *Negative Findings Regarding Father*

¶26 Father argues that the trial court abused its discretion by adopting Judge Foster's negative findings about Father's credibility, personality, and conduct.

¶27 We do not read the trial court's ruling to indicate that it adopted or relied on Judge Foster's findings.[7] To the extent the court did so, however, the court did not abuse its discretion. Judge Foster's observations regarding Father were findings of fact that supported the parties' dissolution decree. Those findings and conclusions were not appealed, and the trial court is entitled to rely on them during the pendency of the case. Further, as previously noted, the court in 2015 had the opportunity to review Father's correspondence and verbal interactions with Mother, and to evaluate Father's demeanor, and its observations regarding Father were consistent with those noted by Judge Foster.

¶28 We also note Father failed to provide this court with a transcript of the 2013 dissolution hearing. *See* ARCAP 11(c)(1)(A) ("The appellant must order transcripts of superior court proceedings not already in the official record that the appellant deems necessary for proper consideration of the issues on appeal."). In the absence of such a transcript, we will presume the evidence supports the court's factual findings and conclusions of law. *See State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 16, 66 P.3d 70, 73 (App. 2003).

### IV. *Attorneys' Fees and Costs*

¶29 Mother requests attorneys' fees pursuant to A.R.S. § 25-324. In our discretion, we deny that request, but award Mother her costs on appeal, subject to compliance with ARCAP 21.

---

7 The court's ruling states that "Mother testified that she adopts, and wants the Court to adopt, the A.R.S. § 25-403 findings Judge Foster made in the dissolution trial." However, the court does not state it granted Mother's request.

**CONCLUSION**

¶30        The family court's order is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA